2025 IL App (2d) 230575-U
No. 2-23-0575
Order filed May 27, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JMS METAL FABRICATION, INC., | ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff and Counterdefendant-Appellant and Cross-Appellee, | ) ) ) | |
| v. | ) ) | No. 21-CH-157 |
| ATLAS AERIALS & EQUIPMENT, LLC, | ) ) ) | |
| Defendant and Counterplaintiff and Third-Party Plaintiff-Appellee and Cross-Appellant | ) ) ) ) | |
| (Harry R. Jordan, as Trustee of the Harry R. Jordan Trust Dated December 20, 1996; Mary Ellen Jordan, as Trustee of the Mary Ellen Jordan Trust Dated December 20, 1996; and First American Bank, Third-Party Defendants). | ) ) ) ) ) ) ) | Honorable Kevin T. Busch, Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:   In suit and countersuit over plaintiff's rental of equipment from defendant, in which the trial court entered a default judgment on defendant's counterclaim for breach of contract, the trial court erred in later vacating the default judgment's award of attorney fees to defendant, but the court did not err in otherwise declining to vacate the default.

¶ 2    On October 18, 2022, the trial court entered a modified default judgment against counterdefendant, JMS Metal Fabrication, Inc. (JMS), awarding counterplaintiff, Atlas Aerials & Equipment, LLC, (Atlas), $25,634.03 in compensatory damages, $1,342.24 in prejudgment interest, and $69,714.63 in attorney fees. Nine months later, JMS filed a petition to vacate the default judgment under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2022)). On August 30, 2023, the trial court granted in part and denied in part the petition to vacate, modifying the judgment to remove the $69,714.63 attorney fees award. The court denied each party's subsequent motion for reconsideration.

¶ 3    JMS timely appealed. JMS argues that the trial court erred in denying in part its petition to vacate the default judgment. JMS asks us to reverse the court's order and remand for a trial on the merits. Atlas filed a timely cross-appeal. Atlas argues that the court erred in modifying the default judgment to vacate the attorney fees award. Atlas asks that we reverse the court's August 30 order and reinstate the default judgment order.

¶ 4    For the reasons that follow, we affirm the trial court's order to the extent that it denied JMS's petition to vacate the default judgment, but we reverse the trial court's order to the extent that it modified the default judgment to remove the attorney fees award.

¶ 5                                I. BACKGROUND

¶ 6    JMS is a "general contractor that performs metal fabrication, welding, bending, machining and other related services in Illinois." Atlas is a provider of "large lifts (*e.g.*, boom lifts, forklifts, etc.) and related equipment for construction jobs." In February 2021, Atlas provided JMS with certain equipment for a construction job at River Oaks Apartments in North Aurora (the River Oaks project). On April 8, 2021, Atlas picked up that equipment. Atlas claimed that, when it picked up the equipment, JMS owed $3,556 in rental fees. Atlas later claimed that JMS owed an

additional $16,942.69 for damage caused to the equipment while in JMS's possession. JMS disputed liability for any damage. On August 2, 2021, Atlas recorded a subcontractor's lien with the Kane County Recorder of deeds with respect to the $3,556 in rental fees that remained due.

¶ 7    On August 9, 2021, JMS filed a four-count complaint against Atlas alleging (1) "breach of agreement" (count I), (2) action to quiet title (count II), (3) tortious interference with contract (count III), and (4) defamation *per se* (count IV). According to count I of the complaint, Atlas provided JMS with equipment for use at the River Oaks project. JMS claimed that, after performing all the terms and conditions of the agreement and returning the equipment, it learned that it had overpaid Atlas. JMS alleged that Atlas refused to return the overpayment. JMS further alleged that Atlas filed a false mechanic's lien on the property.

¶ 8    On November 16, 2021, Atlas answered the complaint and filed a counterclaim against JMS. Atlas also filed third-party claims against Harry R. Jordan, as Trustee of the Harry R. Jordan Trust dated December 20, 1996 (Harry Jordan), Mary Ellen Jordan, as Trustee of the Mary Ellen Jordan Trust dated December 20, 1996, and First American Bank (First American). Harry Jordan and Mary Ellen Jordan (collectively, the Jordans) were alleged to be the owners of the property where the River Oaks Apartments were located. First American was believed to have an interest in the property.

¶ 9    Atlas alleged that Serge Podrez, a/k/a Sergey Podrez, and his wife, Tara Powell, owned JMS. "On or about October 20, 2020, *** Podrez, representing himself as 'Partz Stop' a/k/a 'PartzStop,' executed a rental agreement with Atlas for the provision of certain lift equipment *** [for use at] the [River Oaks] [p]roject [(the rental agreement)]." Atlas attached the rental agreement as an exhibit to the counterclaim. Thereafter, Atlas rented equipment to Partz Stop. At some point, Partz Stop became delinquent in its payments. A representative of Atlas went to the

Partz Stop business location to discuss the delinquent payments and discovered that the location had been vacated. Atlas then contacted Harry Jordan and advised that, if payments were not received, Atlas would file a mechanic's lien. Harry Jordan remitted the past due payments to Atlas.

¶ 10 Atlas alleged that, "[d]uring this time period, *** Podrez requested that Atlas continue to rent lift equipment to JMS under the same terms and condition[s] as contained in the agreement with [Partz Stop] for use at the [p]roject." Although Atlas was reluctant to do so, Harry Jordan "assured Atlas that he would back up the account." Thus, "Atlas agreed to continue renting equipment for use by JMS at the [River Oaks] [p]roject under the original agreement, and JMS agreed to continue renting equipment from Atlas under the original agreement."

¶ 11 Atlas alleged further that, at JMS's request, it had picked up the equipment on April 8, 2021. Atlas subsequently discovered that the equipment had been damaged. In addition, there was an outstanding rental balance. On May 4, 2021, Atlas issued an invoice in the amount of $16,942.69 for the cost to repair the equipment. On May 14, 2021, Atlas e-mailed JMS advising that there was an open invoice for $3,556 in rental fees. When Atlas advised Powell that it was going to bill JMS's credit card on file, Powell denied Atlas authorization to charge the card, stating: " 'There is no rental agreement between Atlas and JMS ***.' " According to Atlas, e-mails were exchanged between Powell and Harry Jordan, wherein Powell claimed to have filed complaints against Atlas with various federal and state agencies. The e-mails were attached. Ultimately, Harry Jordan informed Atlas that it was "on its own in attempting to collect the past due rental charges from JMS." Atlas provided JMS with a notice of lien and, later, on August 2, 2021, recorded a "Subcontractors Claim for Lien with respect to the past due rental charges of $3,556.00." According to Atlas, Powell later told Atlas that she was willing to pay the past due rental charges with the JMS credit card. In light of a prior allegation that Atlas had charged the

card without authorization, Atlas advised that it would accept payment by only cashier's check or cash. JMS never remitted payment.

¶ 12 The counterclaim alleged five counts: (1) breach of contract against JMS (count I), (2) promissory estoppel against JMS and Harry Jordan (count II), (3) defamation *per se* against JMS (count III), (4) abuse of process against JMS (count IV), and (5) foreclosure of mechanic's lien against JMS, the Jordans, and First American (count IV).

¶ 13 In its breach of contract claim against JMS, Atlas alleged that

"[p]ursuant to the terms of the equipment rental agreement, JMS is liable for payment to Atlas in the amount of $3,556.00 for past due rental fees and charges, plus $16,942.69 in damages to Atlas's lift equipment caused by JMS, plus interest, costs, and attorney[ ] fees incurred by Atlas in collecting the foregoing and any other amounts due and owing from JMS to Atlas."

Atlas's request for attorney fees stemmed from the following provision contained in the rental agreement:

"Furthermore, Lessee herby [*sic*] authorizes, irrevocably, any attorney or any court of record to appear for Lessor in such court, whether in term time or vacation, to confess judgment, without process, in favor of Lessor, in the sum of all amounts then due Lessor hereunder, together with statutory interest and reasonable costs of collection, including attorney[ ] fees."

¶ 14 On November 29, 2021, the trial court entered a case management order, which provided that (1) written discovery shall be completed by April 30, 2022; (2) all party, lay, and occurrence witnesses shall be deposed by August 15, 2022; and (3) JMS shall answer or otherwise plead to Atlas's answer, counterclaim, and third-party claims on or before December 15, 2021.

¶ 15    On December 15, 2021, JMS moved to dismiss Atlas's counterclaim under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2020)).  Atlas responded on January 28, 2022.  Following a hearing, the trial court ruled as follows.  The court denied the motion to dismiss as to counts I (breach of contract) and II (promissory estoppel).  The court granted the motion to dismiss, with prejudice, as to counts III (defamation *per se*) and IV (abuse of process).  The court granted the motion to dismiss, without prejudice, as to count V (foreclosure of mechanic's lien).  The court granted Atlas leave to file an amended count V by March 16, 2022.

¶ 16    On March 16, 2022, Atlas filed (1) a motion for reconsideration of the trial court's dismissal with prejudice of its claim against JMS for defamation *per se* and (2) an amended counterclaim.

¶ 17    On March 17, 2022, Atlas filed a four-count second amended counterclaim alleging (1) breach of contract against JMS (count I); (2) promissory estoppel against JMS and Harry Jordan (count II); (3) foreclosure of mechanic's lien against JMS, the Jordans, and First American (count III); and (4) defamation *per se* against JMS (count IV).[1]  As relevant here, it contained the following factual allegation:

"Atlas agreed to continue renting equipment for use by JMS at the [River Oaks] [p]roject consistent with terms and conditions set forth in the original agreement, and JMS agreed to continue renting equipment from Atlas consistent with terms and conditions set forth in the original agreement."

---

[1]Atlas noted that it was realleging its defamation claim subject to its pending motion for reconsideration.

Count I of the second amended complaint made essentially the same claim and sought the same damages as the original complaint.

¶ 18 On April 7, 2022, JMS filed a response to Atlas's motion for reconsideration.

¶ 19 On April 13, 2022, Atlas served JMS with "Rule 213(F) Interrogatories," "First Set [o]f Requests [t]o JMS [f]or Production [o]f Documents," and "First Set [o]f Interrogatories."

¶ 20 On April 19, 2022, with JMS's agreement, Atlas moved for an extension of time to complete written and oral discovery.

¶ 21 On April 26, 2022, the trial court entered an agreed order resetting the hearing on Atlas's motion for reconsideration to May 31, 2022. In addition, on Atlas's motion and without objection from JMS, the court ordered that (1) all written discovery be completed by June 30, 2022; and (2) all party, lay, and occurrence witnesses be deposed by October 31, 2022.

¶ 22 On May 31, 2022, the parties agreed that the hearing on the motion to reconsider be reset to June 28, 2022.

¶ 23 On June 16, 2022, JMS's counsel filed a motion for leave to withdraw, citing JMS's failure to fulfill an obligation to the law firm regarding the firm's services. Counsel stated:

> "In accordance with Rule 13, *** [JMS] has also been notified that FAILURE TO FILE AN APPEARANCE MAY RESULT IN AN ENTRY OF A JUDGMENT AGAINST them and/or MAY RESULT IN THEIR CAUSE BEING DISMISSED as set forth in the Notice of Motion herewith presented, pursuant to the requirements of Rule 13."

Counsel further indicated that "[JMS's] contact information for notices is Tara Powell, ***@jmsmfg.com."

¶ 24 In the notice, JMS's counsel indicated that he would present his motion on June 22, 2022, at 9 a.m. Counsel's notice further indicated:

"In accordance with Illinois Supreme Court Rule 13(c)(2), [JMS] [is] advised that 'to insure notice of any action in this cause, you should retain other counsel herein or file with the Clerk of the Court, within 21 days after the entry of the Order of Withdrawal, your supplementary appearance stating therein an address at which service of notices or other papers may be had upon you.' A copy of such appearance should be mailed to all named attorneys of record.

You are further notified that failure to file an appearance or to have any attorney file his or her appearance on your behalf may result in the entry of a default judgment against you and/or may result in this cause being dismissed."

¶ 25 On June 21, 2022, JMS's counsel filed, as a freestanding "Exhibit," an e-mail exchange between counsel and Powell, which included counsel's motion to withdraw and notice. In the exchange, Powell indicated her receipt of the motion and notice, and she asked counsel not to file it.

¶ 26 On June 21, 2022, the trial court entered an agreed order that (1) JMS shall respond to Atlas's previously served written discovery on or before July 8, 2022; (2) written discovery shall be completed by August 31, 2022; and (3) all party, lay, and occurrence witnesses shall be deposed by November 30, 2022.

¶ 27 On June 22, 2022, the trial court entered a case management order, which (1) granted JMS's counsel's motion to withdraw; (2) granted "[s]ubstitute counsel's oral motion for leave to file a substitute appearance"; (3) struck the June 28, 2022, hearing date for Atlas's motion for reconsideration; and (4) continued the matter on Atlas's motion for reconsideration to July 21, 2022, at 9 a.m.

¶ 28     The hearing on Atlas's motion for reconsideration took place on July 21, 2022. The record does not contain a report of these proceedings. The written order entered that day reflects that the trial court called the case and logged into Zoom at 9:10 a.m., with counsel for Atlas present in court. Neither JMS nor any counsel for JMS appeared. When the court recalled the case at 9:45 a.m., still no one appeared for JMS. The court noted that no attorney had yet filed an appearance for JMS. Thereafter, the court granted in part and denied in part Atlas's motion for reconsideration. The court granted Atlas "leave to amend its counterclaims to allege an alternative theory of relief with respect to the alleged defamatory statements, such as defamation *per quod*." In addition, the written order stated:

> "2. On the oral motion of Atlas relating to JMS'[s] failure to respond to Atlas'[s] written interrogatories, document requests[,] and Rule 213(f) interrogatories that were served on JMS on April 12, 2022, and for JMS'[s] failure to comply with the [o]rder entered on June 21, 2022[,] extending the response date for JMS to respond to said written discovery to on or before July 8, 2022, the [c]ourt hereby orders the following remedies in favor of Atlas and against JMS pursuant to Illinois Supreme Court Rule 219(c) for JMS'[s] unreasonable failure to comply with discovery rules and failure to comply with this [c]ourt's [o]rder of June 21, 2022:
>
> > A. That JMS is barred from presenting any evidence which is related to the subject of Atlas'[s] written discovery; and
> >
> > B. That JMS'[s] claims against Atlas are dismissed[.]"

The matter was set for status on August 31, 2022.

¶ 29     On August 31, 2022, Atlas appeared at the status hearing. The record does not contain a report of those proceedings. According to the written order entered that day, no one appeared for

JMS and no substitute appearance had been filed. Atlas advised the trial court that discovery was to have been completed by August 31, 2022, and that JMS had still not yet responded. Thus, Atlas orally moved for entry of a default judgment. The trial court found that JMS was in default and that the "[c]ounterclaim is confessed against JMS." The court continued the matter "for prove up for the entry of default judgment against JMS on October 4, 2022."

¶ 30　On September 30, 2022, Atlas served its "Exhibits in Support of Entry of Default Judgment" on Powell via e-mail at \*\*\*@jmsmfg.com and on JMS's former counsel. Included as an exhibit was the August 31, 2022, order finding JMS in default and setting the matter for prove-up and entry of a default judgment on October 4, 2022.

¶ 31　On October 4, 2022, the trial court held the prove-up hearing. The record does not contain a report of those proceedings. According to the written order entered that day, JMS did not appear at the hearing and no substitute appearance had been filed. The order indicated that the trial court, "having reviewed the documents presented by Atlas in support of its damages and entry of default judgment," entered default judgment against JMS in favor of Atlas on counts I, II, and III of Atlas's counterclaim in the total amount of $96,690.90, which included $25,634.03 in compensatory damages, $1,342.24 in prejudgment interest, and $69,714.63 in attorney fees and costs.

¶ 32　According to the file stamp on the default judgment order, the order was entered on October 4, 2022, at 2:17 p.m. However, prior thereto, at 10:13 a.m., Podrez filed a *pro se* "Motion to Vacate Default Judgment." Podrez alleged that the case was set to be heard at 9 a.m. on October 4, 2022, and that he "did not appear in court on that date and time because [he] was out of town for work." He further alleged that he "learned of the default judgment on October 4, 2022," and that he "filed this motion as soon as possible after learning of the default." Podrez further alleged that he "has at all times tried [his] best to defend [his] case and preserve [his] rights" and that

"justice will be served only by vacating the default judgment." The *pro se* motion was never noticed for presentment.

¶ 33    On October 7, 2022, Atlas filed a motion to modify the default judgment to include a finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was not just reason for delaying either enforcement or appeal, or both, of the default judgment order. In addition, Atlas filed a motion to strike Podrez's *pro se* motion to vacate, arguing, among other things, that Podrez could not file a motion on behalf of JMS. Alternatively, Atlas argued that the motion should be denied. Notice of the motion to strike was served on Podrez and indicated a hearing date of October 18, 2022. The certificate of service indicated that Podrez was served by regular mail at an address in Hawthorn Woods.[2]

¶ 34    On October 18, 2022, the trial court granted both of Atlas's motions. First, the court entered an order striking Podrez's *pro se* motion. Second, the court entered a modified default judgment order, including a finding under Rule 304(a) that "there is no just reason for delaying either enforcement or appeal or both of this default judgment order."

¶ 35    On April 10, 2023, the trial court entered an agreed order dismissing with prejudice Atlas's third-party claims against the Jordans and First American Bank.

¶ 36    On May 26, 2023, Atlas commenced citation proceedings against JMS. On June 27, 2023, the return date of the citation, attorney James Urtis, without an appearance on file, appeared and

---

[2]In footnote eight of Atlas's response to JMS's July 18, 2023, petition to vacate, Atlas acknowledged that the certificate of service attached to the motion to strike indicated that Podrez was served with the motion to modify the default judgment order, rather than the motion to strike. However, in an affidavit attached to Atlas's response, counsel for Atlas averred that the certificate of service was incorrect and that Podrez was actually served with the motion to strike.

requested three weeks for JMS to respond to the citation. Atlas did not object, and the matter was continued to July 19, 2023.

¶ 37    On July 12, 2023, Urtis filed an appearance on behalf of JMS.

¶ 38    On July 18, 2023, JMS filed a petition to vacate the October 18, 2022, default judgment under section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2022)). JMS argued that it (1) had a meritorious defense to Atlas's claim, (2) acted with due diligence in presenting this defense in the original action, and (3) acted with due diligence in filing its petition for relief.

¶ 39    In its petition, JMS first argued that it had a meritorious defense to Atlas's claim because there was no "written agreement by and between JMS and Atlas," which formed the basis of Atlas's judgment. JMS also claimed that no motion for a default finding or a prove-up hearing was "filed and/or served on JMS." JMS further claimed that it "was not represented by legal counsel at the time that the default was entered and at the time that the judgment was allegedly proved up." Within the context of this argument, JMS questioned: "[H]ow does, short of a gross injustice, a small claim result in a judgment of approximately one hundred thousand dollars ***?"

¶ 40    Second, JMS argued that it acted with due diligence in bringing its defenses in the original action. JMS asserted that it had retained legal counsel who "unfortunately *** withdrew on or about June 22, 2022." JMS asserted it "was represented by *** counsel from August 9, 2021, through June 22, 2022." According to JMS, upon counsel's withdrawal,

> "JMS retained substitute counsel but substitute counsel did not file an appearance and did not respond to discovery. JMS was under the impression that substitute *** counsel was monitoring/managing the matter for JMS while JMS and substitute legal counsel attempted to establish an attorney client relationship. However, JMS was mistaken."

JMS also claimed that when it learned that a default judgment had been entered, it decided to proceed *pro se* and that, when it filed the motion to vacate, it believed that "the court would provide a date for presentment." JMS argued that the *pro se* motion "was stricken on the oral motion of Atlas *** [without] notice" to JMS.

¶ 41    Third, JMS argued that it acted with due diligence in filing the section 2-1401 petition "only 9 months" after entry of the default judgment order. JMS asserted that it was owned and operated by Podrez, "an immigrant from Minsk, Belarus, with no formal education beyond high[ ]school." JMS further asserted that it "attempted to retain legal counsel to handle this matter and was under the impression that legal counsel was handling the matter." JMS also asserted that "[m]ore important than the due diligence requirement is the requirement that substantial justice be achieved."

¶ 42    In an attached affidavit, Podrez averred that he was "the individual, on behalf of JMS, that brought this action. [He] hired legal counsel to represent JMS and authorized the filing of this small claim." He claimed that "[w]hen [his] attorney withdrew, [he] attempted to hire a substitute but [they] never came to terms relative to an attorney[-]client agreement." He claimed further that "[w]hile [he] was attempting to negotiate with substitute legal counsel, a default judgment was entered against JMS." Podrez averred that "[he] was under the impression that [his] substitute legal counsel was monitoring/managing the litigation at that time."

¶ 43    The trial court heard the petition to vacate on August 29, 2023. During the hearing, the trial court questioned Atlas about JMS's argument concerning "the somewhat incongruous damages compared to what [Atlas] *** pled[.]" In response, Atlas pointed to the language in the rental agreement between Atlas and Partz Stop that "provide[d] for the recovery of statutory interest and reasonable costs of collection, including attorney[ ] fees." According to Atlas, as it

alleged in its counterclaim, JMS orally agreed to continue renting equipment from Atlas according to the same terms and conditions contained in the written agreement between Atlas and Partz Stop. Atlas noted that this allegation was pleaded in their counterclaim and was never answered by JMS.

¶ 44 Following argument, the trial court granted in part and denied in part JMS's petition. In denying the petition in part, the court found that JMS had not acted with good faith or due diligence. The court stated that "JMS acted in bad faith in attempting to argue that there was no agreement between the parties when, in fact, in their complaint they allege an agreement and sue for breach of contract." In addition, the court found that JMS had actual notice of the July 21, 2022, proceeding where JMS was barred from presenting evidence related to unanswered discovery propounded by Atlas and where JMS's complaint against Atlas was dismissed. The court explained that substitute counsel for JMS was present at the prior proceeding (on June 22, 2022) when the date was set and indicated that he would be representing JMS. In addition, the court found that JMS was "fully aware of the [prove-up hearing date]" given that Podrez attempted to file a motion to vacate the default judgment that same day.

¶ 45 The court also found that JMS had not "established that [it] [had] a viable defense to the contractual damages pled." Nevertheless, the court went on to state:

"That being said, what is perfectly clear is that the contract sued upon by Atlas is based on a written agreement with Partz[ S]top. And then [Atlas] allege[s] in paragraph 12 of their counterclaim that *** Podrez requested that Atlas continue to rent lift equipment to JMS under the same terms and conditions as contained in the agreement. JMS never admitted that allegation.

Illinois is a state that adheres to the rule that fee shifting is only permissible when statutorily authorized or specifically set forth in a contract.

This Court does not believe that it is—well, the Court feels that it would be error for it to affirm a default judgment for attorney[ ] fees merely based on a default and confession of the complaint when the pleadings that have been previously brought by JMS do not suggest that there was an agreement to the written contract. At no time does JMS in its original complaint reference anywhere the terms of the Partz[ S]top contract. Nowhere [does] [it] plead any invoices that contain language suggesting the Partz[ S]top agreement was the terms upon which the parties were acting, merely that it agrees that it rented property.

And for those reasons, the Court feels that JMS has not satisfied its burden in showing this Court that it is entitled to a vacation of the default or the judgment for compensatory or prejudgment interest.

However, the Court does believe it would be error for this Court to affirm the $69,714.63 in attorney[ ] fees as being contrary to Illinois' rule on fee shifting."

¶ 46    Accordingly, on August 30, 2023, the trial court entered a written order, which "granted in part, and denied in part" JMS's petition and modified the October 18, 2022, default judgment as follows:

"Default judgment is entered against [JMS] and in favor of [Atlas] on [c]ounts I, II[,] and III of Atlas'[s] [c]ounterclaims in the total amount of $26,976.27, which sum includes compensatory damages in the amount of $25,634.03 and prejudgment interest of $1,342.24."

¶ 47    On September 19, 2023, Atlas filed a motion to modify the trial court's August 30, 2023, order. Atlas argued the trial court erred by (1) not enforcing the "admitted, unambiguous contract

provision permitting Atlas to recover its attorney[ ] fees and costs" and (2) modifying the October 18, 2022, default judgment order without any grounds in the record to do so.

¶ 48    On September 28, 2023, JMS filed a motion to reconsider the denial, in part, of its petition to vacate. JMS argued that the trial court "glossed over the fact that there never was any notice of Atlas'[s] [m]otion for [d]efault and [p]rove up properly served on JMS." JMS argued, alternatively, that the award should be further reduced to a total of $20,498.69. According to JMS, if the attorney fees were struck on the basis that JMS never agreed to them, then the 1.5% monthly late fee totaling $5,135.34 should also be struck as it, too, was never agreed to.

¶ 49    On November 14, 2023, the trial court denied both motions. When counsel for JMS attempted to argue that it would be "a one-day trial" and that it was "a small claim" action, the following transpired:

"THE COURT: I know. I don't believe your client didn't know what was going on.

MR. URTIS [(JMS'S COUNSEL)]: But—

THE COURT: His conduct is entirely—

MR. URTIS: Let me—

THE COURT: I don't want to debate it with you because I have told you what I thought. Okay.

I think—I think he was fully aware of the date of the default, and he just sat back and did nothing and then, again, did nothing until finally he hired you and did something.

So take it up if you want to, but I am not going to belabor the point. I have made my decision. ***."

¶ 50    This timely appeal and cross-appeal followed.

¶ 51                                    II. ANALYSIS

¶ 52     On appeal, JMS argues that the trial court erred by denying in part its petition to vacate the October 18, 2022, default judgment.  JMS asks us to reverse the court's order and remand for a trial on the merits.  Atlas, on cross-appeal, argues that the court erred in vacating the part of the default judgment that awarded attorney fees.  Atlas asks that we reverse the court's order and reinstate the entirety of the October 18, 2022, default judgment.

¶ 53     Section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2022)) provides a comprehensive statutory procedure by which final orders and judgments may be vacated more than 30 days after their entry.  *People v. Shinaul*, 2017 IL 120162, ¶ 8.

> "To be entitled to relief under section 2-1401, the petitioner must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986).

The petitioner must establish these elements by a preponderance of the evidence.  *Id.* at 221.  A proceeding under section 2-1401 is not intended to give the petitioner a new opportunity to do that which should have been done in an earlier proceeding or to relieve the party of the consequences of any mistake or negligence.  *In re Marriage of Himmel*, 285 Ill. App. 3d 145, 148 (1996).

¶ 54     We review a trial court's ruling on a section 2-1401 petition for an abuse of discretion. *Airoom*, 114 Ill. 2d at 221. "An abuse of discretion exists where no reasonable person would take the position adopted by the trial court or where the trial court acts arbitrarily, fails to employ conscientious judgment, and ignores recognized principles of law." *Bhutani v. Barrington Bank & Trust Co.*, 2024 IL App (2d) 230162, ¶ 31; see also *People v. J.F.*, 2024 IL App (2d) 230259,

¶ 56 ("An abuse of discretion occurs when the court's ruling was arbitrary, fanciful, or unreasonable, or when no reasonable person would take the court's view.").

¶ 55    Here, the trial court determined that JMS failed to establish due diligence both in filing its section 2-1401 petition and in presenting its defense to Atlas's counterclaim in the original action. This conclusion was not arbitrary, fanciful, or unreasonable.  To be sure, "[n]o bright-line rule exists for judging whether a petitioner has acted diligently." *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 99 (2006).  "Rather, due diligence is judged by the reasonableness of the petitioner's conduct under all of the circumstances." *Id.* at 99-100.  JMS's conduct was not reasonable.

¶ 56    We find *Airoom* instructive.  *Airoom* arose from a dispute between the plaintiff homeowners and their contractor, Airoom. *Airoom*, 114 Ill. 2d at 214.  On June 2, 1983, plaintiffs served Airoom with a summons and complaint. *Id.* at 215.  Airoom failed to appear or answer and, on July 21, 1983, without notice to Airoom, the trial court entered a default judgment against Airoom and set the matter for a prove-up hearing on October 31, 1983. *Id.*  Airoom did not receive notice of the prove-up hearing. *Id.* at 215, 224.  At the October 31 hearing, the court entered a $50,000 judgment, plus costs, in favor of plaintiff. *Id.* at 216.  On April 18, 1984, a nonwage garnishment summons was served on the Bank of Lincolnwood to satisfy the judgment. *Id.*  On May 17, 1984, six-and-a-half months after the entry of the default judgment, Airoom filed its section 2-1401 petition to vacate judgment. *Id.*  With respect to its delay in presenting its claims, Airoom asserted that (1) ' "[Airoom] through its duly authorized officers or agents never received the summons and complaint ***' " and (2) ' "[Airoom] was repeatedly at the premises of the plaintiffs in presence of the plaintiffs and the plaintiffs' attorney trying to correct any errors and trying to settle the matter and at no time was the complaint or the default judgment ever mentioned

by the attorney.' " *Id.* at 224. (In a supplemental affidavit, an Airoom employee admitted receiving a copy of the summons and complaint.) *Id.*

¶ 57 The supreme court agreed with the trial court that Airoom failed to establish that it acted with due diligence in defending the cause, noting that "there [was] no doubt that Airoom's dilemma [was] the result of its own negligence and indifference to or disregard of the circuit court's process." *Id.* at 224-25. The court stated:

"Airoom had ample opportunity to avoid the default judgment by filing its answer or appearance. It chose, however, not to use this opportunity, instead relying belatedly, without counsel, on out-of-court negotiations and good-faith attempts to settle the dispute. Although 'the law encourages out-of-court settlement of controversies, it is imperative that defendants not disregard their legal rights and obligations. *** Relief under section [2–1401] is available only to those who diligently pursue their legal defenses and remedies in court, not to those who disregard these procedures on the gamble that better results can be obtained through other procedures or at a cheaper cost.' " *Id.* at 224 (quoting *Abbell v. Munfield*, 76 Ill. App. 3d 384, 388 (1979)).

The court stated that, "[h]ad Airoom kept abreast of this litigation, it would have known of the entry of the judgment." *Id.* at 225. The same reasoning applies here.

¶ 58 First, JMS's conduct in waiting nine months to file the present petition to vacate was not reasonable. JMS places heavy emphasis on the fact that the trial court entered a default judgment against JMS without a written motion, or notice, by Atlas. However, regardless of whether JMS was served with formal written notice of Atlas's oral motion on August 31, 2002, for a finding of default (entered that same day) or of the October 4, 2022, prove-up hearing at which the default judgment was entered, there is no question that, as the trial court found, JMS had *actual* notice, on

October 4, 2022, that a default judgment had been entered. Indeed, on the same day the default judgment was entered, Podrez filed a *pro se* motion to vacate the default judgment order at 10:13 a.m., *prior* to the actual 2:17 p.m. entering of the default judgment. In his *pro se* motion, Podrez stated that the "case was set to be heard at 9:00 a.m." and that he "did not appear in court on that date and time because [he] was out of town for work." He made no claim that he had been unaware of the hearing date, instead stating only that he could not attend because he was out of town. Certainly, this suggests that Podrez was well aware of the hearing before it occurred. But, in any event, it is undisputed that he was aware on October 4, 2022, of the default judgment entered that day.

¶ 59    While it may be true that Podrez attempted to file a *pro se* motion to vacate the default judgment on October 4, 2022, the critical fact is that, thereafter, Podrez took no further action. In the subsequent, properly filed petition, JMS claimed: "[Podrez] believed that, upon filing the [*pro se*] motion, the court would provide a date for presentment. That never happened. Without notice to JMS, JMS motion was stricken on the oral motion of Atlas at a status conference in which JMS was not present nor had notice." However, contrary to JMS's claim, on October 7, 2022, Atlas filed a *written* motion to strike Podrez's *pro se* motion. In addition, the record shows that Atlas served notice of the October 18, 2022, hearing, at which the petition was stricken, on Podrez by regular mail at an address in Hawthorn Woods. But, more importantly, even if Atlas did not serve notice of the motion to strike, Podrez's failure to timely inquire into the status of his own *pro se* motion and *his failure to take no further action for nine months*—indeed, not until after Atlas filed its citation to discover assets—was not reasonable and established a clear lack of due diligence. See *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 433 (2007) ("[I]t is the responsibility of the party filing a motion to request the trial judge to rule on it[.]"). The trial

court expressed its opinion as to JMS's lack of diligence very clearly when it denied JMS's motion for reconsideration, stating, "I think he was fully aware of the date of the default, and he just sat back and did nothing and then, again, did nothing until finally he hired you and did something." We agree.

¶ 60    Nevertheless, Podrez argues that, "[u]nder the circumstances, [he] acted reasonably." Those "circumstances" include his status as "an immigrant from Minsk, Belarus, with no formal education beyond high[ ]school," his unfamiliarity "with Illinois civil procedure, let alone a 2-1401 [p]etition," and the fact that he "attempted to retain legal counsel in three separate instances to handle this matter." None of these "circumstances" excuse Podrez's failure to keep informed of the status of his case, especially after learning that the default judgment had been entered against JMS.

¶ 61    It is axiomatic that *pro se* litigants "must comply with the same rules and are held to the same standards as licensed attorneys." *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78. " '[A] court will not apply a more lenient standard to *pro se* litigants.' " *Id.* (quoting *People v. Fowler*, 222 Ill. App. 3d 157, 163 (1991)). Thus, Podrez cannot hide behind his unfamiliarity with court procedures (whether it be due to his ethnic background or his limited educational background). We also give little, if any, weight to JMS's claim that Podrez attempted three times to hire counsel. JMS has presented no compelling reason as to why it was unable to secure counsel from the time JMS's original counsel withdrew in June 2022 until July 2023—after Atlas filed the citation to discover assets.

¶ 62    Based on the foregoing, we hold that the trial court did not abuse its discretion in finding that JMS did not exercise due diligence in the filing of the section 2-1401 petition.

¶ 63    Next, we find no abuse of discretion in the trial court's determination that JMS failed to establish due diligence in bringing its defenses in the original action.  JMS argues: "JMS did not neglect the original action; in fact, JMS filed the original action!"  We note, however, that JMS's original action was dismissed on July 21, 2022, and the propriety of its dismissal is not before us. The question here is whether JMS acted diligently in bringing its defenses to Atlas's counterclaim. As JMS notes, "[w]ith regard to diligence in presenting a defense[,] the defendant must show that his failure to defend was a result of excusable mistake[ ] and[,] that under the circumstances[,] he acted reasonably, and not negligently, when he failed initially to resist the judgment."  *Westphall v. Trailers, Campers, Campgrounds, Inc.*, 76 Ill. App. 3d 205, 207 (1979).  JMS did not make such a showing here.

¶ 64    JMS points to its counsel's act of withdrawing from the case on June 22, 2022.  JMS argues that, thereafter, "JMS retained substitute counsel[,] but substitute counsel did not file an appearance and in fact abandoned JMS."  JMS also argued in its petition that it "attempted to retain legal counsel to handle this matter and was under the impression that legal counsel was handling the matter."  It makes the same argument on appeal.  However, JMS's claim that it "was under the impression that legal counsel was handling the matter" is contradicted by Podrez's affidavit wherein he averred that, after JMS's counsel withdrew, he "attempted to hire a substitute but [they] never came to terms relative to an attorney client agreement."  Given that substitute counsel was never actually retained, it was not reasonable for JMS to believe that substitute counsel was monitoring anything.

¶ 65    JMS's inability to reach an agreement with an attorney for representation does not excuse its failure to act with due diligence in presenting its defense to Atlas's claims.  When JMS's counsel filed its motion to withdraw on June 16, 2022, counsel notified JMS that it should retain other

counsel or file a supplementary appearance within 21 days and that the failure to do so may result in entry of a default judgment against it or dismissal of its case. On June 21, 2022, *before counsel withdrew*, JMS was advised that it had until July 8, 2022, to respond to previously served written discovery and that all written discovery was to be completed by August 31, 2022. Thus, JMS was well aware of the discovery deadline. Substitute counsel was present at the June 22, 2022, hearing on the motion to withdraw and requested leave to file an appearance. The matter was continued to July 21, 2022, and JMS did not appear on that date. No substitute appearance was filed. Despite having had ample notice, from its own counsel, that it needed to hire new counsel or faced a default judgment, JMS took no further action. Indeed, JMS did not retain new counsel until June 27, 2023, the return date on Atlas's citation—one year after its initial counsel withdrew and almost nine months after it learned of the default judgment.

¶ 66    In any event, JMS did not act diligently even while it was represented by counsel. On March 17, 2022, Atlas filed its second amended counterclaim, which is the subject of this appeal. Per Illinois Supreme Court Rule 182(b) (eff. Jan. 1, 1967), JMS had 21 days—until April 7, 2022— to respond to the second amended counterclaim. JMS never answered the second amended counterclaim and offers no explanation for its failure to do so.[3] On April 26, 2022, the trial court ordered that all written discovery be completed by June 30, 2022. The court later ordered—on

---

[3]In its reply brief, JMS claims that Atlas "never filed an amended counterclaim." This is incorrect. Atlas filed its second amended counterclaim on March 17, 2022. JMS is relying on the fact that, on July 21, 2022, in response to Atlas's motion to reconsider, the court granted Atlas "leave to amend its counterclaims to allege an alternative theory of relief with respect to the alleged defamatory statements, such as defamation *per quod*." Although Atlas never filed a third amended counterclaim alleging that alternative theory of relief, its previously filed second amended counterclaim remained in effect.

June 21, 2022—that "JMS shall respond to Atlas' previously served written discovery on or before July 8, 2022" and that "[w]ritten discovery shall be completed by August 31, 2022." Thus, JMS was aware that it had until July 8, 2022, to respond to Atlas's written discovery. Counsel's motion to withdraw was heard and granted on June 22, 2022. Substitute counsel (although not ultimately retained) was present and granted leave to file an appearance. At this hearing, the court continued the matter to July 21, 2022, at 9 a.m. for a hearing on Atlas's pending motion for reconsideration. Thus, as the trial court found, JMS had actual notice of the July 21, 2022, hearing. Despite having actual notice, JMS did not retain new counsel or appear. JMS has not presented a reasonable excuse for failing to appear. As noted, JMS's excuse that it believed substitute counsel was handling things is not reasonable.

¶ 67    At the July 21, 2022, hearing, per Atlas's oral motion, the trial court sanctioned JMS under Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) for its "unreasonable failure to comply with discovery rules and failure to comply with this [c]ourt's [o]rder of June 21, 2022[.]" The court ordered that JMS was barred from presenting any evidence related to the subject of Atlas's written discovery and, in addition, it dismissed JMS's complaint. JMS makes much of the fact that the July 21, 2022, hearing had not been set for a motion to dismiss or a motion to bar evidence. Citing *Berg v. Mid-America Industrial, Inc.*, 293 Ill. App. 3d 731 (1997), JMS argues that "notice to a party of a status conference where a motion to dismiss would be considered and acted upon is not considered proper notice." We note again that the propriety of the trial court's dismissal of JMS's complaint against Atlas is not before us. The question is not whether JMS acted diligently in prosecuting its case against Atlas but, rather, whether JMS acted diligently in defending itself against Atlas's counterclaim. In any event, even if Atlas did not give notice to JMS of its intent to seek sanctions, there is no question that JMS's failure to appear at the July 21, 2022, hearing,

*despite having actual notice*, evidences its failure to diligently defend itself. And, had JMS appeared, it would have been aware of the next status date of August 31, 2022.

¶ 68    To be sure, the record does not contain any evidence establishing that Atlas provided JMS with notice of its intention to seek a default finding at the status hearing on August 31, 2022. While this could arguably provide a reasonable excuse for JMS's failure to defend against Atlas's oral motion for a finding of default, it does not excuse JMS's prior failings set out above. Moreover, if JMS had kept abreast of the litigation, it would have become aware of the default finding. See *Airoom*, 114 Ill. 2d at 225. The record shows no reasonable excuse for JMS's actions after the default finding. On September 30, 2022, after Atlas obtained a finding of default against JMS, Atlas served its "Exhibits in Support of Entry of Default Judgment" on Powell via e-mail at \*\*\*@jmsmfg.com. Included as an exhibit was the August 31, 2022, order finding JMS in default and setting the matter for a prove-up hearing for entry of a default judgment on October 4, 2022. JMS calls into question "the fact that Atlas attempted to provide notice to JMS via e[-]mail to an e[-]mail address Atlas found on a website[.]" However, we note that JMS's counsel, in its motion to withdraw, specifically directed that notices be served to Powell at the e-mail address used by Atlas. In any event, as noted by the trial court, the record established that, notwithstanding any lack of formal notice, JMS had actual notice of the October 4, 2022, hearing.

¶ 69    Based on the foregoing, we find no abuse of discretion in the trial court's conclusion that JMS failed to establish that it acted with due diligence in presenting its defense in the original action.

¶ 70    We turn now to the question of whether JMS established the existence of a meritorious defense to Atlas's claims. The trial court expressly found that JMS had not "established that [it] [had] a viable defense to the contractual damages pled." The court noted that "JMS acted in bad

faith in attempting to argue that there [was] no agreement between the parties when, in fact, in their complaint they allege an agreement and sue for breach of contract." Nevertheless, although not expressed as such, the trial court seemingly determined that JMS had a *partial* meritorious defense to Atlas's claim—*i.e.*, a defense to Atlas's claim for attorney fees. The court stated:

> "[T]he Court feels that it would be error for it to affirm a default judgment for attorney[ ] fees merely based on a default and confession of the complaint when the pleadings that have been previously brought by JMS do not suggest that there was an agreement to the written contract. At no time does JMS in its original complaint reference anywhere the terms of the Partz[ S]top contract."

Thus, the court concluded, contrary to its determination at the prove-up hearing, that Atlas was not entitled to attorney fees. We agree with Atlas's argument on cross-appeal that this was error.

¶ 71 First, "[a]s a general principle, the entry of an order that modifies a final judgment based solely on equitable and fairness considerations, in the absence of a showing that all requirements of section 2-1401 are satisfied, subverts the statutory purpose of section 2-1401." *Work Zone Safety, Inc. v. Crest Hill Land Development, L.L.C.*, 2015 IL App (1st) 140088, ¶ 18.

> "As our supreme court recognized in *People v. Vincent*, 226 Ill. 2d 1 (2007), '[w]hen the legislature abolished the [common law] writs in favor of [the] statutory remedy[, *i.e.*, section 2-1401],' for vacating a final judgment, 'it became inaccurate to continue to view the relief in strictly equitable terms.' " *Id.* (quoting *Vincent*, 226 Ill. 2d at 16).

Rather, to warrant relief under section 2-1401, the petition must establish the three requirements set forth in *Airoom*. *Id.* Here, given the trial court's conclusions that JMS failed to act with due diligence—a conclusion with which we wholeheartedly agree—JMS failed to meet its burden under section 2-1401, and thus there was no basis for modifying the final default judgment.

¶ 72 Further, we note that Atlas alleged in its second amended complaint that, after Partz Stop became delinquent in payments due under the terms of the rental agreement, Atlas advised Harry Jordan that, if payments were not received, Atlas would file a mechanic's lien. Harry Jordan remitted the past due payments to Atlas. Atlas alleged further that, "[d]uring this time period, *** Podrez requested that Atlas continue to rent lift equipment to JMS under the same terms and condition[s] as contained in the agreement with *** Podrez/Partz Stop for use at the [River Oaks] [p]roject." Thereafter, "Atlas agreed to continue renting equipment for use by JMS at the [River Oaks] [p]roject consistent with terms and conditions set forth in the original agreement, and JMS agreed to continue renting equipment from Atlas consistent with terms and conditions set forth in the original agreement." As noted, the rental agreement contained a fee-shifting provision.

¶ 73 "Illinois generally follows the 'American Rule': absent statutory authority or a contractual agreement between the parties, each party to litigation must bear its own attorney fees and costs, and may not recover those fees and costs from an adversary." *Morris B. Chapman & Associates, Ltd. v. Ktizman*, 193 Ill. 2d 560, 572 (2000).

¶ 74 Here, following the prove-up hearing, the trial court entered a default judgment in favor of Atlas, which included an attorney fees award.[4] See *Illinois Neurospine Institute, P.C. v. Carson*, 2017 IL App (1st) 163386, ¶ 33 (a default judgment requires both a finding of liability and an assessment of damages). However, the court later determined, upon JMS's petition to vacate, that Atlas was not entitled to attorney fees because "JMS never admitted [Atlas's] allegation" that "JMS agreed to continue renting equipment from Atlas under the original agreement." The court further noted that "the pleadings that have been previously brought by JMS do not suggest that

[4]As noted, there is no report of this proceeding in the record.

there was an agreement to the written contract." But, as Atlas notes, JMS never answered Atlas's second amended counterclaim. Therefore, all well-pleaded facts were deemed admitted as a matter of law. See *Pinnacle Corp. v. Village of Lake in the Hills*, 258 Ill. App. 3d 205, 209 (1994) ("a failure to file an answer results in well-pleaded facts being deemed admitted"); *Roth v. Roth*, 45 Ill. 2d 19, 23 (1970) ("A failure to respond to an adversary pleading may constitute an admission of all the facts well pleaded by the adversary and admissions thus drawn from a failure to plead may be considered as evidence."). Thus, JMS admitted that it "agreed to continue renting equipment from Atlas consistent with terms and conditions set forth in the original agreement." The terms and conditions that bound JMS necessarily included the attorney fees provision.

¶ 75 Based on the foregoing, we hold that the trial court erred in modifying the October 18, 2022, default judgment to eliminate its award of attorney fees.

¶ 76 III. CONCLUSION

¶ 77 For the reasons stated, we affirm the trial court's order to the extent that it denied JMS's petition to vacate the October 18, 2022, default judgment, and we reverse the trial court's order to the extent that it modified the default judgment order to remove the attorney fees award. Accordingly, we reinstate the award of "$69,714.63 in attorney[ ] fees and costs" as set forth in the October 18, 2022, default judgment.

¶ 78 Affirmed in part and reversed in part.